762 P.2d 542

**Jack LONDEN, taxpayer and elector, and the Arizona Republican Party, through Jack Londen, National Committeeman, Petitioners,**

v.

**Jim SHUMWAY, Secretary of State of Arizona, Respondent.**

No. CV–88–0255–SA.

Supreme Court of Arizona.

Sept. 22, 1988.

Law Offices of Mitchell C. Laird, P.C. by Mitchell C. Laird, Jerry Steele, Phoenix, for petitioners.

Robert K. Corbin, Atty. Gen., by Jessica Gifford Funkhouser, Norman Chip Wagoner, Asst. Attys. Gen., Phoenix, for respondent.

FELDMAN, Vice Chief Justice.

The Arizona Republican Party and its national committeeman, Jack Londen (petitioners), seek an order requiring the incumbent appointed secretary of state to run in the 1988 general election.

After oral argument, we concluded that art. 5, § 8 of the Arizona Constitution and A.R.S. § 38–295(C) control whether an appointed secretary of state holds office for the entire, unexpired term of his predecessor or only until the next general election after his appointment. Article 5, § 8 of the Arizona Constitution allows the governor to fill vacancies "by appointment" and A.R.S. § 38–295(C) provides that appointees shall hold office for the "unexpired term" of the predecessor. Therefore, we denied relief, stating that this opinion would follow. Order, June 28, 1988.

Arizona Constitution art. 6, § 5(1) gives us original jurisdiction of this special action.[1] We accept because of the importance of the question and the exigencies involved. *See* Rule 1, Ariz.R.P.Sp.Act., 17B A.R.S.

FACTS

This case arises from the impeachment of Governor Evan Mecham.[2] For this action, we need only state that on November 4, 1986, Mecham was elected governor and Rose Mofford was reelected secretary of state. The Arizona House of Representatives later impeached Mecham and on April 5, 1988, the Arizona Senate, sitting as a court of impeachment, convicted him. Consequently, Mofford became governor, vacating the office of secretary of state. Ariz. Const. art. 5, § 6.

As the Arizona Constitution explicitly authorized, Mofford appointed respondent, Jim Shumway, secretary of state. Ariz. Const. art. 5, § 8. The secretary of state serves a four-year term. *Id.* § 1. Had Mofford remained secretary of state, her term would have expired in 1990. Petitioners now seek an order requiring her appointee to run for office in the next regularly scheduled election in 1988. *Id.* art. 7,

---

1. In Arizona, relief formerly obtained by writs of prohibition, mandamus or certiorari is now obtained by "special action." Rule 1, Ariz.R.P. Sp.Act., 17B A.R.S.

2. For a detailed account of the impeachment, *see Green v. Osborne,* 157 Ariz. 363, 758 P.2d 138 (1988).

§ 11 (providing for biennial general elections).

## ISSUE

When the governor appoints a new secretary of state, does the appointee hold office for the remainder of the predecessor's four-year term or must he run in the next general election after appointment?

## DISCUSSION

### A. Constitutional Analysis

Petitioners argue that the framers of the Arizona Constitution intended that an appointee to elected office only serve until the next general election and not for the remainder of the predecessor's term. If they are correct, the office of secretary of state must be on the ballot in 1988.

Petitioners concede, however, that no specific constitutional provision supports their argument. Article 5, § 8 is the only express language dealing with a general appointment power:

**Vacancies in office**

Section 8. When any office shall, from any cause, become vacant, and no mode shall be provided by the Constitution or by law for filling such vacancy, the Governor shall have the power to fill such vacancy by appointment.

Section 8 gave Mofford the authority to appoint Shumway but is silent on whether the appointee holds office for the duration of his predecessor's term.

Petitioners' argument also suffers from the fact that the framers of our constitution lacked either specific or general intent on this question. When the constitution was written in 1910, it provided only a two-year term for all state executive offices, including secretary of state. Ariz. Const. art. 5, § 1 (1910, amended 1968). Thus, any appointee to a vacant office in the executive branch would necessarily serve for *both* the remainder of his predecessor's term *and* until the next election. This, no doubt, explains the lack of any provision in art. 5, § 8 to cover the present problem.

In 1968, the legislature and voters amended the constitution extending the terms of secretary of state and other officers to four years. The framers of this 1968 amendment, however, failed to prescribe the length of an appointee's term. Thus, neither the text nor the framers' intent answers today's question.[3]

Although we have neither text nor framers' intent to guide us, petitioners argue that *State ex rel. Sullivan v. Moore,* 49 Ariz. 51, 64 P.2d 809 (1937), allows us to divine what the framers would have done if they had considered the problem and to write the answer ourselves. As *Moore* noted, the original constitution had only three classes of elective officers whose terms exceeded two years: supreme court justices (six-year terms), corporation commissioners (six-year terms), and superior court judges (four-year terms). *Id.* at 65, 64 P.2d at 815. The constitution authorized the governor to fill vacancies for these judicial and quasi-judicial offices, but only until the next election. *See* Ariz. Const. art. 6, § 3, ¶ 4 (1910); art. 15, § 1, ¶ 2 (1910); art. 6, § 5, ¶ 4 (1910).

Petitioners cite a policy statement in *Moore* to argue that the framers would have ordered executive branch appointees to run in the next general election had they considered the problem. 49 Ariz. at 66, 64 P.2d at 815 ("it was the policy of the makers of the Constitution that no appointment by the Governor to fill a vacancy should extend beyond" the next general election).

We do not believe that petitioners' conjecture regarding the framers' intent should determine this case. First, *Moore* does not apply here. *Moore* recognized a legislatively created elective office and held that a specific statute permitted an appoin-

---

**3.** We use the phrase "framers' intent" in the broad sense, encompassing both text that specifically instructs on the point in issue (*e.g.,* "the person so appointed shall hold office until the next general election") and one of the grand generalities so often used in both the federal and state constitutions (*e.g.,* "due process of law") by which the framers pointed the direction in which we are to proceed, without necessarily illuminating the result in any particular case. Neither guidepost exists in this case.

tee to the state tax commission to serve only until the next general election. *Id.* at 66–67, 64 P.2d at 815–16. No specific constitutional provision even arguably authorizes, let alone requires, the same result here. Although the constitution contains specific clauses prescribing the tenure of appointees to the superior court, the supreme court and the corporation commission, Ariz. Const. art. 6, §§ 4, 12 and 37; art. 15, § 1, it lacks either a general or specific clause defining the tenure of an appointed secretary of state or other executive branch officer. Thus, *Moore* does not support petitioners' belief in what the framers would have intended in the present case.

Second, and more important, our analysis here must also consider the system of tenure adopted by the framers of relevant constitutional amendments. In 1968, the legislature submitted and the voters adopted a constitutional amendment giving the governor, secretary of state, state treasurer, attorney general, and superintendent of public instruction four-year terms. Ariz. Const. art. 5, § 1. This amendment also provided that all candidates for these offices would run together in 1970. *Id.* Thus, the framers of the 1968 amendment intended these officers to have four-year terms, and to hold office and seek election simultaneously. Given the nature and importance of these executive offices, this is wise policy in what is essentially a two-party political system.

Because the 1968 amendment specifically required a four-year term for the office of secretary of state, we cannot summarily order that a secretary of state run in the next general election but serve only two years. Nor can we order the whole executive branch to run again in the next general election to keep all the offices in sync. By adopting petitioners' argument we would permanently put the secretary of state on an election schedule different from the rest of the executive branch. This we are unwilling to do absent specific constitutional mandate.

Finally, even if we agreed with petitioners' view of what the framers might have done, we do not have the power to provide for their omission. Our job is to interpret the constitution and, especially with general clauses, to apply it to modern problems. *See United States v. Superior Court,* 144 Ariz. 265, 275–76, 697 P.2d 658, 668–69 (1985). We have no prerogative to write specific clauses into the constitution where the framers provided neither specific guidance nor a statement of general principle.

B. Statutory Analysis: A.R.S. § 38–295(C)

Although neither a constitutional nor specific statutory provision controls here, A.R.S. § 38–295(C) provides the following:

> Vacancies occurring in an office, or in the membership of a board or commission, shall be filled only for the unexpired term of the officer or member.

In an opinion on this matter, the Arizona Attorney General argued that under this statute appointments to office, such as secretary of state, are "for the unexpired term" of the predecessor. Atty Gen.Op. I88–065 (R88–075) (June 10, 1988).

Petitioners disagree, contending that the statute is ambiguous and merely prohibits an appointee from serving longer than the unexpired term of his predecessor. Although the statute prevents an appointee from serving his own full term, its wording is not limited to have only this effect. Arguably, the statute also mandates that an appointee shall serve for the full unexpired term of his predecessor. *Bolin v. Superior Court,* 85 Ariz. 131, 138, 333 P.2d 295, 299–300 (1958). Petitioners have not offered us any reason to interpret the statute differently.

Petitioners also challenge the statute's constitutionality. They argue that under *Bolin,* we should ignore the statute and hold in accordance "with the general principles of democracy, which require that offices which are elective in their nature should, as far as practicable, be filled by election." 85 Ariz. at 137, 333 P.2d at 299 (quoting *Moore,* 49 Ariz. at 67, 64 P.2d at 816). As petitioners accurately state, *Bolin* held that notwithstanding A.R.S. § 38–295(C), an appointed corporation com-

missioner could serve only to the next general election and not for the rest of his predecessor's term. 85 Ariz. at 138, 333 P.2d at 299–300.

*Bolin,* however, is not controlling here. The Arizona Constitution specifically addresses the tenure of appointees to vacancies on the corporation commission:

> In case of vacancy in said office, the Governor shall appoint a commissioner to fill such vacancy. Such appointed commissioner shall fill such vacancy *until a commissioner shall be elected at a general election* as provided by law, and shall qualify.

Ariz. Const. art. 15, § 1 (emphasis added).

*Bolin* merely clarified the ambiguous phrase "at a general election," by interpreting it to mean "the next general election ... after the vacancy occurs." 85 Ariz. at 138, 333 P.2d at 299. Although clarifying this constitutional ambiguity, we stated that the electorate should have "the right and opportunity at the earliest possible date of selecting officers to fill vacancies in elective offices with a person of their own choice." *Id.* at 137, 333 P.2d at 299. Because a specific constitutional provision applied, we found in *Bolin* that A.R.S. § 38–295(C) did not apply. *Id.* at 138, 333 P.2d at 299–300. The *Bolin* principle guides us when interpreting ambiguous constitutional provisions but does not control when no constitutional provision exists and A.R.S. § 38–295(C) applies.

Arizona Constitution art. 5, § 8 authorizes the legislature to define the "mode" for filling vacancies. A.R.S. § 38–295(C) does this and no contrary constitutional provision prevents its application here. Construing § 38–295(C) to authorize an appointee to the executive office of secretary of state to serve for the unexpired term of his predecessor preserves the election timing sequence for executive offices.

## CONCLUSION

In the absence of constitutional text providing specific instructions or guiding principle, we conclude that the statute prevails. Section 38–295(C) arguably requires the appointee to hold office for the unexpired

term of his predecessor. By so interpreting the statute, we adhere to the constitutionally required timing scheme for elections to executive offices. We reject a result that would put the office of secretary of state on the ballot in "off years," separated from the rest of the executive branch.

We hold, therefore, that Jim Shumway was appointed for the unexpired term of his predecessor, Rose Mofford, and the office of secretary of state will not appear on the ballot until the general election of 1990.

Relief denied.

GORDON, C.J., and CAMERON, HOLOHAN and MOELLER, JJ., concur.